IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

RICHARD FOWLER, JR.,

        Plaintiff,

v.                                                                             CIV 14-0233 KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing, with Supporting Memorandum (*Doc. 20*), filed September 29, 2014. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *Doc. 11*. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record, the Court finds that Plaintiff's motion is well-taken and will be granted.

**I.    Procedural History**

On November 1, 2010, Plaintiff filed initial applications with the Social Security Administration for Disability Insurance Benefits and Supplemental Security Income (SSI) under Title II and XVI of the Social Security Act, with an alleged onset of disability beginning on April 30, 2010. *AR* at 173.[1] Plaintiff explains in his Motion to Remand that his SSI claim was not pursued and is not at issue. *Doc. 20* at 2. Plaintiff's date last

---

[1] Documents 17-1 through 17-17 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

insured for Disability Insurance Benefits is June 30, 2015. *AR* at 31, 183. His disability claim was denied initially on January 7, 2011, and upon reconsideration on May 19, 2011. *Id.* at 29.

Administrative Law Judge Michelle K. Lindsay ("the ALJ") held a *de novo* hearing on July 11, 2012. Id. at 49. Plaintiff appeared at the hearing with legal counsel, Gary Martone. *Id.* at 49. Following the hearing, on November 1, 2012, the ALJ issued her Decision, determining that Plaintiff was not disabled. *Id.* Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council; the Council declined this request on January 22, 2014. *Id.* at 1. As such, the ALJ's Decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 459 (10th Cir. 2003).

In its Notice of Appeals Council Action, the Council noted that new medical records from April 10, 2013, were submitted after the ALJ issued her decision. *Id.* The Appeals Counsel advised Plaintiff that if he wanted a determination of whether he was disabled after November 1, 2012, he should re-apply for Disability Insurance Benefits. *Id.* Plaintiff explained in his Motion to Remand that he filed a subsequent application for Disability Insurance Benefits with an alleged onset date of November 2, 2012, the day after the ALJ's unfavorable decision. *Doc. 20* at 8. Plaintiff recently provided notice that this subsequent application was approved. *Doc. 24.* Although Plaintiff is entitled to Disability Insurance Benefits beginning November 2, 2012, the relevant time period for this Court's review of the Commissioner's unfavorable disability determination is April 30, 2010 to November 1, 2012.

A claimant seeking Disability Insurance Benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a). The Commissioner is required to use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 31. At Step Two, the ALJ determined that Plaintiff had the severe impairments of degenerative disc disease, lumbar; cognitive disorder, not otherwise specified; and, marijuana abuse. *Id.* At Step Three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the regulatory "listings." *Id.* at 32. At Step Four, she assessed Plaintiff's residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff "to perform light work as defined in 20 CFR 404.1567(b) except he is limited to routine, unskilled work." *Id.* at 34. The ALJ also determined at Step Four that Plaintiff could perform his past relevant work as a "bakery bagger/stacker" DOT # 524.687-022, as it is generally performed in the national economy. *Id.* at 41. Accordingly, the ALJ determined that Plaintiff was not disabled. *Id.*

## II. Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and whether her decision is supported by substantial evidence. *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. *Id.* Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept

as adequate to support a conclusion." *Id.* The Court may not reweigh the evidence, substituting its own discretion for that of the Commissioner. *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

## III. Analysis

An ALJ must determine a claimant's RFC at Step Four. *Winfrey v. Chater*, 92 F.3d 1017, 1017 (10th Cir. 1996). Here, Plaintiff alleges that the ALJ's RFC determination was flawed in a number of respects, including the ALJ's weighing of the medical opinion evidence and her failure to adequately account for Plaintiff's mental impairments in the mental RFC. *Doc. 20* at 9-10.

### A. Whether the ALJ Properly Weighed the Medical Opinion Evidence

First, Plaintiff contends that the ALJ erred in giving "little weight" to the opinion of Eligio R. Padilla, Ph.D. *Doc. 20* at 10-11. At the administrative hearing, Plaintiff's counsel offered his "lay opinion" that Plaintiff may have certain "cognitive problems." *AR* at 90-91. He requested that the administrative record be held open to allow the scheduling of an additional consultative examination for evaluation of Plaintiff's cognitive limitations, which the ALJ permitted. *Id.* at 90. At the request of Plaintiff's counsel, Dr. Padilla performed a mental status evaluation with IQ testing on Plaintiff on July 27, 2012. *Id.* at 517.

In her Decision, the ALJ discussed Dr. Padilla's report and recited Plaintiff's scores on the Mini-Mental Status Examination, the Wechsler Adult Intelligence Scale – Fourth Edition (WAIS-IV), and the Global Assessment of Functioning (GAF). The ALJ also discussed Dr. Padilla's findings that Plaintiff's intelligence and fund of knowledge were below average, that he was functioning at the "Borderline level," and that there

were indications of serious symptoms or serious impairments in social or occupational functioning. *Id.* at 38-39.

According to Dr. Padilla's report, he also found that Plaintiff had marked limitations in following detailed or complex instructions, sustaining concentration and task persistence, interacting with supervisors, and adapting to changes in the workplace. *Id.* at 523-24. Dr. Padilla opined that Plaintiff's attention, concentration, and memory were impaired and that his speech was delayed. *Id.* at 519. He also found a number of Plaintiff's executive functions, such as judgment and decision making, to be impaired. *Id.* at 520. Although Plaintiff appeared to Dr. Padilla to have done his best, he ranked in the 3rd percentile in verbal comprehension and full scale IQ scores and in the 2nd percentile in processing speed. *Id.*

The ALJ explained in her Decision that she gave "little weight" to Dr. Padilla's opinions. *Id.* at 40. She explained that Dr. Padilla's report was based upon only one evaluation of Plaintiff, which was after the administrative hearing and at a time when it was "certainly in [Plaintiff's] best interest to present himself in a less than favorable light." *Id.* The ALJ concluded that "nothing else in the record . . . would support the kind of limitations found by Dr. Padilla." *Id.* Noting that Dr. Padilla attributed great importance to Plaintiff's former career as a boxer, the ALJ disagreed with the limitations that he described, particularly given that Plaintiff had worked successfully after his boxing career. *Id.* For instance, Plaintiff described prior jobs to include dishwasher, fast food cook, tire changer, baker's helper, baker, shopping cart attendant, retail stocker, and grocery store bagger/stocker, and assistant boxing coach. *Id.* at 38. Plaintiff explained that he lost his most recent full-time job at Wal-Mart because he allegedly "worked too

long without taking a break," but Mr. Fowler believes that Wal-Mart actually terminated him because he had received an on-the-job back injury. *Id.* at 58-59. The ALJ was also critical of Dr. Padilla's reliance on Plaintiff's subjective symptoms and limitations, finding that "[t]he doctor relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to accept as true most, if not all, of what the claimant reported." *Id.*

In the end, the ALJ gave more weight to the non-examining state agency physicians' opinions than those of Dr. Padilla, although she acknowledged that non-examining physicians' opinions generally deserve less weight than examining or treating physicians. In addition to the reasons that she outlined for diminishing the weight given to Dr. Padilla's opinions, she also explained that the state agency physicians' opinions "are better supported by the evidence of record." *Id.* These physicians opine that Plaintiff did not have any severe functional limitations, though they did not specifically assess Plaintiff's mental status. AR at 456, 510. Presumably, the ALJ considered these opinions more consistent with the evidence of record because they, like the record, do not discuss any cognitive limitations.

With the exception of Dr. Padilla's report, the balance of Plaintiff's records include few references to cognitive issues and demonstrate that Plaintiff sought treatment primarily for back pain. In her Decision, the ALJ discussed Dr. Radecki's impression at one appointment that Plaintiff had some trouble expressing himself and was slow to answer questions. *AR* at 36. She also discussed Plaintiff's suspected post-concussive syndrome following an automobile accident on December 8, 2011, as well as his career as a professional boxer and at least one instance of being knocked out. *Id.*

at 37-38. On the other hand, she explained that Plaintiff reported no history of psychiatric hospitalizations, the use of psychotropic medication, or the participation in psychotherapy. *Id.* at 40. She also noted that a long-time friend of Plaintiff's reported that he was capable of caring for his personal needs independently, that he participated in his church, and that he gets along well with everyone. *Id.*

Given the scant references to possible cognitive issues found in Plaintiff's records, along with his work history, and ongoing job search, the Court cannot say that it was unreasonable for the ALJ to give little weight to Dr. Padilla's report, even while giving more weight to the opinions of non-examining state physicians. *See* 20 C.F.R. § 404.1527(c)(4). While an examining source's opinion is presumptively entitled to more weight than a doctor's opinion derived from a review of medical records, such a presumption can be rebutted by providing "specific, legitimate reasons" for doing so. *Chapo v. Astrue*, 682 F.3d 1285 (10th Cir. 2012).

In *Chapo v. Astrue*, the Tenth Circuit found an ALJ's assessment of an examining source's opinion to be erroneous, where he merely recognized that the professional relationship was limited and did not find the physician's opinions consistent with other evidence in the record. *Id.* at 1291. The Tenth Circuit concluded that the ALJ in *Chapo* had "fully discounted the bulk of [the examining source's] mental RFC limitations with no explanation at all as to why one part of his opinion was creditable and the rest was not." *Id.* at 1292.

Here, the ALJ has articulated an adequate basis for discounting Dr. Padilla's limitation opinions, reasoning that Plaintiff had a post-hearing incentive to present

himself with significant mental limitations, that Plaintiff only saw Dr. Padilla once,[2] that Plaintiff worked successfully following his boxing career, that Dr. Padilla relied heavily on subjective symptoms and limitations,[3] and that Dr. Padilla's opinions were inconsistent with other evidence of record.[4] The Court may not reweigh the evidence or substitute its own discretion for that of the Commissioner, s*ee Glass*, 43 F.3d at 1395, and I find no reversible error with respect to the ALJ's weighing of medical opinions.

### B. Whether the RFC Adequately Accounted for Mental Impairments

Plaintiff argues that the ALJ's RFC determination, which limits him to routine, unskilled work, does not adequately account for his severe cognitive impairment. Doc. 20 at 9-10. The definition of "unskilled" work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 404.1568. Moreover, unskilled work can usually be learned in 30 days with little specific vocational preparation and judgment needed. *Id.*

The ALJ determined at Step Three that Plaintiff had the severe mental impairment of "cognitive disorder, not otherwise specified." *AR* at 31. Although Dr. Padilla found marked limitations in various areas, the ALJ reasonably gave Dr. Padilla's limitation opinions "little weight," rating Plaintiff's impairments less severely than Dr.

---

[2] *Cf.* 20 C.F.R. § 404.1527(c)(2)(i) ("Generally the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.")

[3] *See Hackett v. Barnhart*, 395 F.3d 1168, 1174 (10th Cir. 2005) (determining that the ALJ reasonably discounted the treating physician's opinion, where it was based on the claimant's subjective reports of mental limitations, rather than objective findings).

[4] *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Gonzales v. Colvin*, 515 F. App'x 716, 719 (10th Cir. 2013) (concluding that the ALJ properly gave the state agency physician's opinion greater weight where it was supported by the evidence, which was the same evidence that undermined the treating physician's opinion).

Padilla. For instance, while Dr. Padilla determined that Plaintiff had *marked* limitations in all areas of sustained concentration and task persistence, *AR* at 524, the ALJ found *moderate* difficulties with respect to concentration, persistence or pace, *id.* at 33. The ALJ's intermediate ratings reflect limitations sufficiently severe to interfere with work activities but not disabling enough to dictate a peremptory award of benefits under the listings at Step Three. Having found that Plaintiff did not meet the listings, the ALJ proceeded to Step Four.

At Step Four, the ALJ determined Plaintiff's RFC, finding that his impairments limited him to light, unskilled, routine work. *AR* at 34. She explained that her RFC determination was supported by Plaintiff's past work, his continuing search for work, and the opinions of the state agency physicians. *AR* at 40. Although we know that the ALJ gave Dr. Padilla's opinions little weight, she did not articulate to what extent the "unskilled, routine" component of Plaintiff's RFC was nevertheless derived from his opinions. The fact that the state agency physicians' opinions found no severe impairments, mental or physical, and did not specify limitations to routine or unskilled work suggests that this component of Plaintiff's RFC was derived from Dr. Padilla's report but tempered by the lack of corroborating evidence or opinions elsewhere in the record.

Plaintiff relies upon Social Security Rulings (SSR) 85-15 and 96-8p, as well as *Chapo v. Astrue* and *Groberg v. Astrue*, 505 Fed. Appx. 763 (10th Cir. 2012), in support of his position that the RFC did not adequately account for his cognitive impairments. Ruling 96-8p provides, in pertinent part, that "[w]ork-related mental activities generally required by competitive, renumerative work include the abilities to: understand, carry

out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996). Ruling 85-15 provides that a "decisionmaker must not assume that failure to meet or equal a listed mental impairment equates with capacity to do at least unskilled work," *id.* at *4, and that "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must be reflected in the RFC assessment," *id.* at *6.

In *Chapo*, the Tenth Circuit determined that the ALJ's hypothetical to the vocational expert did not adequately incorporate the claimant's mental restrictions. *Chapo*, 682 F.3d at 1289. Although the jobs cited by the vocational expert were unskilled jobs, the court reasoned that limiting a claimant to unskilled work did not adequately address the impairment of his mental functions "which 'are not skills but, rather, general prerequisites for most work at any skill level.'" *Id.* at 1290 n.3 (citing *Wayland v. Chater*, 1996 WL 50459, at *2 (10th Cir. Feb. 7, 1996) for the proposition that unskilled jobs do not address mental impairment). The court went on to explain that a restriction to "simple" work, which is a "vague catch-all term," was insufficient to capture various functionally-distinct mental limitations. *Id.*

The court reached a similar conclusion in *Groberg*. There, the Commissioner argued that the ALJ had implicitly included mental limitations in the hypothetical question that he posed to the vocational expert when he asked the expert to only identify "unskilled" jobs. *Id.* at 770. The Tenth Circuit disagreed with the Commissioner's position, finding it "directly counter to Tenth Circuit authority," because "[a] limitation to 'simple work' or 'unskilled jobs' is generally insufficient to address a claimant's mental

impairments." *Id.* (citing *Chapo*, 682 F.3d at 1290 n.3 and *Wayland*, 1996 WL 50459, at *2).

Similarly, in *Wayland v. Chater*, an unpublished decision cited by the Tenth Circuit in both *Chapo* and *Groberg*, the Tenth Circuit held that the ALJ erred in equating the plaintiff's mental limitations with absent work skills and limiting the range of work to unskilled work. 1996 WL 50459, at *1. The court reasoned as follows:

> Deficiencies in concentration like plaintiff's may well be especially disruptive of production, and perhaps even physically dangerous to the claimant and/or her coworkers, in the kinds of repetitive tasks typically involved in unskilled work. In short, the tacit premise in the ALJ's analysis, i.e., that a cognitive or emotional impairment may be functionally equated with the lack of skill, as that term is employed in the Secretary's regulations, is wrong. Numerous authorities illustrate the basic point that intact mental aptitudes are not skills, but rather, general prerequisites for most work at any skill level.

*Id.* at *2 (citing *Frey v. Brown*, 816 F.2d 508, 517-18 (10th Cir. 1987)).

I have previously considered the "difficult issue" of whether it is error for an ALJ to omit from her RFC finding and her hypothetical to the vocational expert any limitation for moderate difficulties in concentration, persistence or pace. *See, e.g., Padilla v. Astrue*, 12cv0484, Doc. 24 (D.N.M. Jan. 7, 2013). According to the regulations, concentration, persistence or pace "refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." *Stokes v. Astrue*, 274 F. App'x 675, 680 (10th Cir. 2009) (quoting 20 C.F.R. pt. 404, subpt. P., App. 1, § 12.00(C)(3)).

In *Padilla*, I acknowledged the tendency of some ALJs to "conflate a moderate [concentration, persistence or pace] impairment with a 'simple and routine' limitation."[5]

---

[5] As examples, I referenced two Tenth Circuit cases: *Weigel v. Astrue*, 425 F. App'x 706, 707-08 (10th Cir. 2011), in which the ALJ found moderate difficulties in concentration, persistence or

-11-

*Id.* at 11. I also discussed *Wiederholt v. Barnhart*, 121 F. App'x 833 (10th Cir. 2005), in which the Tenth Circuit determined that the "relatively broad, unspecified nature of the description 'simple' and 'unskilled'" did not adequately incorporate the ALJ's findings of impairments such as moderate difficulties in maintaining concentration, persistence, or pace. *Padilla*, 12cv0484, Doc. 24, at 11. I concluded that the *Weiderholt* decision could "be read as holding that the 'simple and unskilled' limitation and moderate concentration problems inquiry are mutually exclusive." *Id.* at 11. Notably, in *Seagroves v. Astrue*, 09cv1182 WPL, Doc. 20, (D.N.M. July 26, 2010), Magistrate Judge Lynch of this District considered *Wiederholt* persuasive and held that a limitation to "simple unskilled instructions and tasks" in the ALJ's RFC failed to account for moderate difficulties in concentration, persistence, or pace. *Id.* at 11.

I ultimately distinguished the holdings in *Wiederholt* and *Seagroves* from the issues in *Padilla* on the basis that the ALJ in *Padilla* implicitly found that the plaintiff's deficiency in concentration, persistence, and pace applied only to complex tasks. *See Padilla*,12cv0484, Doc. 24, at 12 (citing *Chambers v. Barnhart*, 2003 WL 22512073, at *3 n.2 (10th Cir. 2003) in which the court reasoned that "restricting a claimant to simple tasks can address a deficiency in concentration, persistence and pace *if* that deficiency *was found to apply only to complex tasks*.") Additionally, I found that the RFC and hypothetical at issue there encompassed the plaintiff's moderate concentration, persistence, and pace limitation "by restricting him to 'simple, routine tasks' and

---

pace but determined that the plaintiff could perform a full range of simple work, and *Trujillo v. Astrue*, 241 F. App'x 526, 528 (10th Cir. 2007), in which the ALJ found moderate difficulties in concentration, persistence, or pace, and therefore included within his RFC a restriction to work involving simple repetitive tasks. *Padilla*, 12cv0484 at 11 n.3.

*exempting him wholesale from having to work 'at a production pace.'" Id.* at 10 (emphasis added).

In contrast, here, there is no indication in either the ALJ's opinion or the administrative record that Plaintiff's difficulties in concentration, persistence, or pace only come into play when he is engaged in complex tasks. Nor did the RFC provide an exemption from working at a production pace like the RFC in *Padilla*. Further, the ALJ here failed to provide an adequate analysis or explanation of how she arrived at a limitation to routine, unskilled work, especially in light of her finding of a severe cognitive impairment and moderate difficulties in sustaining concentration, persistence, and pace.

In sum, I find that the ALJ erred in failing to adequately account for Plaintiff's severe cognitive impairment or for the moderate difficulties that she found to exist with respect to Plaintiff's concentration, persistence, or pace. On remand, the ALJ should address these limitations in her RFC assessment.

## IV. Conclusion

For all of these reasons, the Court finds that Plaintiff's motion to remand is well-taken and that this matter should be remanded for proceedings consistent with this Memorandum Opinion.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's motion to remand *(Doc. 20)* is **granted**.

_____
UNITED STATES CHIEF MAGISTRATE JUDGE
Presiding by Consent